UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

STEPHEN ACHEAMPONG, *et al.*,

Plaintiffs,

v.

LAS VEGAS VALLEY WATER DISTRICT,

*et al.*,

Defendants.

Case No. 2:15-cv-00981-RFB-PAL

**ORDER**

Motions for Summary Judgment

## I. INTRODUCTION

Before the Court are Defendant's Motions for Summary Judgment. ECF Nos. 45 – 54. For the reasons stated below, the Motions are granted in part and denied in part.

## II. PROCEDURAL BACKGROUND

Defendant filed a petition for removal on May 27, 2015. ECF No. 1. On June 3, 2015, Defendant filed a Motion to Dismiss. ECF No. 7. On February 18, 2016, this Court held a hearing on the Motion to Dismiss, in which it granted the motion and gave the Plaintiffs 45 days to file an amended complaint. Plaintiffs filed an Amended Complaint on April 18, 2016. ECF No. 35. Defendant filed an Answer on May 2, 2016. ECF No. 37. Discovery closed on January 30, 2017.

ECF No. 42. Dispositive motions were due on March 30, 2017. ECF No. 44. Defendant filed the instant Motions for Summary Judgment on March 17 and 18, 2017. ECF Nos. 45-54. On May 30, 2017, Defendant filed a Stipulation and Order to Consolidate Cases for Trial. ECF No. 75.

### III. LEGAL STANDARD

#### A. Motion for Summary Judgment

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When considering the propriety of summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. Gonzalez v. City of Anaheim, 747 F.3d 789, 793 (9th Cir. 2014). If the movant has carried its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (alteration in original) (internal quotation marks omitted).

### IV. UNDISPUTED FACTS

The Court finds the following facts to be undisputed.

#### A. Facts Relevant to All Plaintiffs

The Las Vegas Valley Water District ("The District") is a not-for-profit utility that began providing water to the Las Vegas Valley in 1954. The Southern Nevada Water Authority

("SNWA") is a separate joint powers authority formed in the early 1990's by a number of area political subdivisions of the State of Nevada (including the District, North Las Vegas, Las Vegas, Boulder City, and Henderson) to manage the region's water resources. The District supplies personnel and funds to operate the SNWA.

When the District hires an employee, the employee receives a Handbook, which outlines the District's general policies and procedures ("Handbook"). Some, but not all, employees are members of unions covered by Collective Bargaining Agreements ("CBAs").

From 2008 to 2011, the nation was mired in a severe economic downturn, and Las Vegas' economy was profoundly affected. The economic downturn dramatically diminished the District's revenues, as the level of new construction during that timeframe declined. Declining construction meant declining connection fees. Connection revenue went from approximately $188 million in 2008 to approximately $3 million by 2010.

General Manager Pat Mulroy addressed the economic downturn in her "General Manager Briefings" from 2009 to 2011. She informed those in attendance that, "under her watch," the District was doing its best to not lay anyone off during recession, and it was utilizing other options in an effort to address the decreasing revenue. However, the District continued to have financial challenges, experiencing the absence of new construction in the Valley and facing difficulties with bond obligations. In 2013, the Board approved a new Strategic Plan, in which the central goal was the management of resources in a responsible manner. This led to a major shift in the District's focus, from growth and development of new resources to operation and maintenance of existing resources.

When the new General Manager, John Entsminger, took over in February of 2014, he met with his Deputy General Managers to evaluate a reduction in force to address the lack of new

development, falling revenues, and to better meet the District's new Strategic Plan. In doing so, Entsminger directed department heads to review workload and staffing levels for their respective departments and focus on retaining only what was necessary to sustain the core functions of the District and SNWA from 2014 to the "reasonably foreseeable future." Entsminger did not set any targets for the reduction and each department was solely responsible for selection of employees for the layoffs. It was not a District-wide reduction by any set classification. Department heads would provide the list to the Senior Management Committee, and Pat Maxwell—the director of the Human Resources department—would review the list for any disparate impact on protected categories of employees. She ultimately approved a list that she believed had no disparate impact. In total, 101 positions from the District and the SNWA were eliminated in the reduction in force ("RIF"), spanning nearly all departments.

### B. Facts Relevant to Plaintiff Talley (ECF No. 48)

Plaintiff Talley began working at the District in 2005 and was employed as a Materials Handler II when he was included in the RIF in 2013. Plaintiff Talley was over forty years of age when he was included in the RIF. Three of the four material handlers in Plaintiff Talley's department were included in the RIF, with only the most senior employee remaining with the District. Plaintiff Talley was covered by a CBA.

### C. Facts Relevant to Plaintiff Pridgen (ECF No. 49)

Plaintiff Pridgen was employed as a Business Analyst in the IT Department at the District when she was included in the RIF in 2013. Plaintiff Pridgen was over forty years old when she was included in the RIF. Plaintiff Pridgen was not covered by a CBA.

### D. Facts Relevant to Plaintiff Halverson (ECF No. 50)

Plaintiff Halverson was employed as a Resource Analyst on the Resource Planning Team

at the District when he was included in the RIF in 2013. Plaintiff Halverson was over forty years old when he was included in the RIF. During the RIF, the District retained William Murray, the other Resource Analyst on the Resource Planning Team, who was younger than Halverson and had been with the District for less time. Plaintiff Halverson was not covered by a CBA.

### E. Facts Relevant to Plaintiff Bordelois (ECF No. 50)

Plaintiff Bordelois was employed as a Civil Engineer at the District when she was included in the RIF in 2013. Plaintiff Bordelois and her same-sex partner spoke with Pat Maxwell in human resources regarding the mishandling of insurance and tax issues related to their status as a same-sex couple and filed a complaint with the District regarding these issues. Plaintiff Bordelois was included in the RIF fifteen months later.

### F. Facts Relevant to Plaintiff Jackson (ECF No. 51)

Plaintiff Jackson was employed as a Civil Engineer in the Engineering Services Division of the District when he was included in the RIF in 2013. Plaintiff Jackson was over forty years old when he was included in the RIF. During the RIF, the District retained Jason Ghadery, another Civil Engineer, who was younger than Plaintiff Jackson. Plaintiff Jackson was not covered by a CBA.

### G. Facts Relevant to Plaintiff Morgan (ECF No. 51)

Plaintiff Morgan was employed as a Senior Civil Engineer in the Engineering Services Division of the District when he was included in the RIF in 2013. Plaintiff Morgan was over forty years old when he was included in the RIF. During the RIF, the District retained Michael Dishari, another Senior Civil Engineer, who was younger than Plaintiff Morgan. Plaintiff Morgan was not covered by a CBA.

### H. Facts Relevant to Plaintiff Russo (ECF No. 52)

Plaintiff Russo was employed as a Mechanical Engineer, P.E. at the District when he was included in the RIF in 2013. Plaintiff Russo was over forty years old when he was included in the RIF. Plaintiff Russo was not covered by a CBA.

**I. Facts Relevant to Plaintiff Wilson (ECF No. 53)**

Plaintiff Wilson had been with the District for ten years and was employed as a Construction Engineer, P.E. when he was included in the RIF in 2013. Plaintiff Wilson was over forty years old when he was included in the RIF. Plaintiff Wilson was not covered by a CBA.

**V. DISCUSSION**

As a preliminary matter, the Court notes that the Plaintiffs only chose to defend certain claims in responding to the Motions for Summary Judgment. The Court will only discuss those claims that were defended and deems all other claims to be abandoned by the Plaintiffs.

**A. ADEA Disparate Treatment Claims**

**1. Legal Standard**

In response to the Motions for Summary Judgment, Plaintiffs have indicated that they are only pursuing the ADEA claims under a disparate treatment theory. The ADEA makes it "unlawful for an employer ... to … discharge any individual [who is at least 40 years old] ... because of such individual's age." 29 U.S.C. §§ 623(a)(1), 631(a); Pottenger v. Potlatch Corp., 329 F.3d 740, 745 (9th Cir. 2003). "To prevail on a claim for age discrimination under the ADEA, a plaintiff must prove at trial that age was the 'but-for' cause of the employer's adverse action… 'Unlike Title VII, the ADEA's text does not provide that a plaintiff may establish discrimination by showing that age was simply a motivating factor.'" Shelley v. Geren, 666 F.3d 599, 607 (9th Cir. 2012) (citing Gross v. FBL Fin. Servs., 557 U.S. 167, 176 (2009).

At the summary judgment stage, the Ninth Circuit applies the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) in ADEA cases. Shelley,

666 F.3d at 607. First, the Plaintiff must establish a prima facie case of age discrimination through circumstantial evidence by showing that: he was "(1) a member of a protected class [age 40-70]; (2) performing his job in a satisfactory manner; (3) discharged; and (4) replaced by a substantially younger employee with equal or inferior qualifications." Nidds v. Schindler Elevator Corp., 113 F.3d 912, 917 (9th Cir. 1996)(internal citations omitted). As to the fourth element, when the discharge results from a general reduction in workforce, courts require instead "circumstantial, statistical, or direct evidence that the discharge occurred under circumstances giving rise to an inference of age discrimination." Rose v. Wells Fargo & Co., 902 F.2d 1417, 1421 (9th Cir. 1990).

If the plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a non-discriminatory reason for its employment decision. Coleman v. Quaker Oats Co., 232 F.3d 1271, 1281 (9th Cir. 2000). If the employer does so, then in order to prevail, the plaintiff must show that the alleged reason for the adverse employment action was a pretext for a discriminatory motive. Id. The plaintiff can prove pretext "(1) indirectly, by showing that the employer's proffered explanation is 'unworthy of credence' because it is internally inconsistent or otherwise not believable, or (2) directly, by showing that unlawful discrimination more likely motivated the employer." Shelley, 666 F.3d at 609 (internal citation omitted).

### 2. Discussion

The Court, prior to addressing the arguments for each plaintiff, makes one preliminary finding. Specifically, the Court finds that Plaintiffs have not established through disputed or undisputed evidence that the District engaged in a systemic effort to target older employees for inclusion in the RIF. Plaintiffs have presented no systemic analysis of the termination of District employees under the RIF to suggest the existence of a pattern of discrimination in relation to inclusion of an employee in the RIF. Indeed, the Plaintiffs conceded at oral argument that they had no such analysis or expert testimony in this regard. Plaintiffs simply seek to rely upon the proximity to retirement of some of the plaintiffs who were terminated under the RIF—without

even identifying if this itself was a verifiable or documented pattern throughout the RIF. This is insufficient by itself to create an inference of pretext for all of the older employees included in the RIF or to support an argument for disparate impact as to the RIF.

> ***i.*** *Plaintiff Talley (ECF No. 48)*

As to the prima facie case, Defendant LVVWD concedes that Plaintiff was over 40 (and thus falls in a protected class) and was discharged as part of the RIF, but argues that he cannot establish the other necessary elements. Although Defendant never explicitly concedes that Plaintiff Talley was performing his job in a satisfactory manner, it does not make any arguments regarding this element. Rather, it focuses solely on the argument that Plaintiff Talley has not offered sufficient direct or circumstantial evidence that his inclusion in the RIF was due to a discriminatory motive. As Talley has offered evidence that his job duties were still necessary to and performed by employees at the District after he was included in the RIF, the Court finds that Plaintiff has raised a sufficient inference of discriminatory intent to establish a prima facie case. See Merrick v. Hilton Worldwide, Inc., 867 F.3d 1139, 1146 (9th Cir. 2017).

Plaintiff argues that this same evidence also raises an inference of pretext sufficient to survive summary judgment. Plaintiff states that his primary job duties as a Materials Handler II were "receiving and shipping items, stock and supplies the District ordered. We checked out materials the employees of the District needed. We kept the warehouse stocked to meet the Water District's needs." ECF No. 61, Ex. A at ¶ 12. Plaintiff states that out of the four Materials Handler IIs, he was the only one laid off. However, he admits that the Materials Handler IIs who were retained were more senior than him in the Department and possibly in the District. ECF No. 48, Ex. G at 89:21-90:10. Plaintiff Talley's CBA provided, "employees shall be laid off by District

seniority from the affected job classifications as follows…" ECF No. 48, Ex. H.[1] Defendant includes a declaration from the former Human Resources Director, Patricia Maxwell, who states that "[t]he only consideration given to Talley being chosen for the RIF was his seniority in the department." As Plaintiff Talley does not dispute that he was the least senior employee in his job classification, the Court finds that the District was merely following the requirements of the CBA when it selected him for the RIF. The Court finds that Plaintiff Talley has not established a disputed fact regarding whether the District's stated reason for terminating him was pretextual. Summary judgment is granted as to Plaintiff Talley.

     ii. *Plaintiff Pridgen (ECF No. 49)*

As to the prima facie case, the District also does not dispute that Plaintiff Pridgen was over forty years old or that she was included in the RIF and does not raise any arguments regarding job performance. Plaintiff Pridgen argues that she has raised an inference of discrimination because her duties continue to be performed at the District after she left. She states that she was a project manager for the Learning Management System implementation, which tracked training and certification for District employees, and that she managed the IT budget. ECF No. 72, Ex. A at ¶¶ 10-13. She claims that "[t]he type of work I was responsible for never ceased during the recession and continues regardless of the status of the economy" and that "[t]his type of work continues after the layoffs." Id. at ¶¶ 16-17. Based on this information, the Court finds that Plaintiff Pridgen has established a prima facie case. Merrick, 867 F.3d at 1146.

Defendant argues that the reason it included Plaintiff Pridgen in the RIF was that "her skills did not fit the needs of the IT department, as she did not perform software development or business

---

[1] Plaintiff urges the Court to interpret this provision to mean that the District would lay off employees covered by this CBA from a pool of all covered employees, rather than from within each affected apartment. As explained below in the discussion of Plaintiff's promissory estoppel claim, the Court rejects this interpretation.

- 9 -

analyst work." ECF No. 49 at 14. However, Plaintiff Pridgen states in her declaration and deposition that there were employees in the IT Department who had functions besides software development and business analysis, including the work she did in project management and budgeting. As Defendant's stated reason for terminating her conflicts with other evidence in the record, the Court finds that Plaintiff Pridgen has established a question of fact regarding pretext. Summary judgment is denied as to Plaintiff Pridgen.

        *iii.     Plaintiff Halverson (ECF No. 50)*

The Court finds that Plaintiff Halverson has also provided sufficient circumstantial evidence of discriminatory intent to survive summary judgment on this claim. Plaintiff Halverson identifies William Murray, the other Resource Analyst on the Resource Planning Team, who was younger than Halverson and had been with the District for less time, but was not included in the RIF when Halverson was. The District provides a declaration from Patricia Maxwell, the former human resources director, who explains that the District decided to retain Murray rather than Halverson because it found Murray's job functions to be more essential and because the District was looking into automating some of Halverson's job functions. Under these circumstances, with two competing declarations attempting to explain a decision, Plaintiff Halverson has raised a material question of fact regarding whether his age was the true motivation for his inclusion in the RIF. This is sufficient to establish a prima facie case and to raise a factual dispute regarding pretext. Summary judgment is denied as to Plaintiff Halverson.

        *iv.     Plaintiffs Morgan and Jackson (ECF No. 51)*

Plaintiffs Morgan and Jackson also identify younger employees in their departments who were retained after the RIF. Morgan identifies Michael Dishari, who was younger than Morgan and remained at the District in the same position he held – Senior Civil Engineer – when Morgan

was included in the RIF. Morgan acknowledges that Dishari was hired at the District before him, but points out that Dishari had only been in the Engineering Services Division for one year, whereas Morgan had been there for his entire tenure of eleven years at the District. Jackson identifies Jason Ghadery, who was younger than him and remained at the District after the RIF, even though he had only one year of experience as a Civil Engineer at the time. Once again, Defendant argues that these employees were retained because of their experience in certain areas and performance of various job functions, and not because of Defendant's preference for younger employees. The Court finds, however, that this conflicting evidence is sufficient to establish a prima facie case and raise a genuine question of material fact regarding pretext. The Court denies summary judgment as to Plaintiffs Morgan and Jackson.

*v.   Plaintiff Russo (ECF No. 52)*

The District concedes that Plaintiff Russo was over forty years old at the time he was terminated and that he was included in the RIF, and they fail to make an argument regarding his performance. Plaintiff Russo argues that the fact that three out of the four mechanical engineers in his group were retained and continued to do maintenance and repair work while he was terminated gives rise to an inference of age discrimination sufficient to establish a prima facie case. The Court disagrees.

The only project he was working on at the time of his termination, an assessment of all pipelines within the Southern Nevada Water Systems called Project 340R, was in its final stages and the only remaining task for the project was the receipt of a final report from the consultant who assisted with the closeout paperwork. Plaintiff Russo admits that the District had not yet agreed to implement any of his additional recommendations at the time he was terminated and he was thus not aware of any additional tasks he would be assigned. The Court thus finds that Plaintiff

has not raised a factual dispute regarding pretext for his termination. Summary judgment is granted as to Plaintiff Russo.

>   *vi.* *Plaintiff Wilson (ECF No. 53)*

The District concedes that Plaintiff Wilson was over forty years old at the time he was terminated and that he was included in the RIF, and they fail to make an argument regarding his performance. Plaintiff Wilson argues that at least some of his job duties continued to be performed at the District after he was included in the RIF. The Court finds this sufficient to establish a prima facie case. Merrick, 867 F.3d at 1146.

Defendant asserts that Plaintiff Wilson was included in the RIF because he was a construction engineer and, due to the decline in construction, the District had less work for him to perform. Plaintiff Wilson responds that he performed a variety of tasks at the District, "including updating the water infrastructure and facilities, maintaining equipment warranties, handling contracts for well-abandonment projects, developing a valve operations plan[], and reviewing and updating storm runoff plans." ECF No. 73 at 6-7. He states that these projects are necessary for the continued operation of the District and continued after he left. Id. at 7. The Court finds that Plaintiff Wilson has raised a question of fact regarding whether the District's stated reasons for including him in the RIF were pretextual. Summary judgment is denied at to Plaintiff Wilson.

> **B. Promissory Estoppel Claims**
>   *1. Legal Standard*

All employees in Nevada are presumptively at-will employees. Martin v. Sears, Roebuck & Co., 899 P.2d 551, 554 (Nev. 1995) (internal citations omitted). The Nevada Supreme Court has held that "at-will employment can be terminated without liability by either the employer or the employee at any time and for any reason or no reason," unless the reason violates public policy. Id. at 553-54. "This presumption may be rebutted by proving, by a preponderance of the evidence,

that there was an express or implied contract between the employer and the employee which indicates that the employer would only terminate the employee for cause." Id. at 554 (internal citation omitted). Promissory estoppel allows a party that has reasonably relied on the promise of another to their detriment to enforce a contract against the other party, even though there was no consideration given. Vancheri v. GNLV Corp., 777 P.2d 366, 369 (Nev. 1989). In the employment context, the employee must show that the employer's conduct expressed an intention to create something other than an at-will employee relationship. Id.

### *2. Discussion*

#### *i. Plaintiff Talley (ECF No. 48)*

Plaintiff Talley was a member of a union and thus covered by a collective bargaining agreement ("CBA"). The Employee Handbook explicitly states, "Employees covered by this handbook include regular (not temporary) employees who are (1) not represented by a recognized bargaining unit (union)…" ECF No. 61, Ex. D at 4 (emphasis in original). Therefore, the Court finds that Plaintiff Talley was not covered by the Employee Handbook and the only possible basis for Plaintiff Talley's promissory estoppel claim is his CBA. Plaintiff Talley's CBA provided that "employees shall be laid off by District seniority from the affected job classifications as follows…" ECF No. 48, Ex. H. Plaintiff Talley argues that the Court should interpret this policy to mean that Defendant would lay off employees in order of seniority from a pool of all affected departments in the RIF, rather than in order of seniority from within each affected department. Plaintiff Talley argues that if the CBA is interpreted in this manner, the District violated it by selecting him for the RIF when less senior employees were retained elsewhere at the District. The only evidence that Plaintiff Talley submits to support his interpretation of the CBA and his claim that Defendant violated it is his own self-serving affidavit. The Court rejects Plaintiff Talley's interpretation as

illogical and instead reads this provision to mean that in the event of a layoff, each department would choose which employees by "job classification" to lay off in order of seniority. Plaintiff Talley has not identified a less senior employee who was kept in his job classification after the RIF. As Plaintiff Talley has not identified a promise that the District failed to keep, his promissory estoppel claim necessarily fails. Summary judgment is granted as to Plaintiff Talley.

> ii. *Plaintiff Pridgen (ECF No. 49)*

Plaintiff Pridgen argues that she relied on promises Defendant made in its Employee Handbook to follow certain procedures in the event of a layoff, including laying employees off in order of seniority. The Employee Handbook includes the following section regarding layoffs:

> While the employment relationship at the District is considered to be "at-will," and thus subject to termination at any time for whatever reason, unless business needs dictate otherwise, employees from the affected job classifications will generally be laid off in the following order:
> 1. temporary employees,
> 2. employees in the introductory period, and
> 3. regular employees.
> When it becomes necessary to lay off a regular employee, skill, ability, and length of service are the determining factors. Where skill and ability are approximately equal, length of service governs. ECF No. 49, Ex. A. at 23.

First, the Court notes that this section states that "the employment relationship at the District is considered to be 'at-will,' and thus subject to termination at any time for whatever reason…" and that it creates an exception to its layoff policy when "business needs dictate otherwise." The contract then prioritizes "skill" and "ability" before "length of service." The Plaintiff has not raised a genuine issue of disputed fact as to how Plaintiff Pridgen's termination did not satisfy the business needs of the District to reduce its workforce.

Moreover, even assuming order of seniority was the only or primary mechanism for determining termination, Plaintiff Pridgen has not offered any disputed facts regarding whether Defendant violated its own stated layoff policies. Plaintiff Pridgen argues that this seniority policy should be interpreted to mean that Defendant would lay off employees in order of seniority from

a pool of all affected departments, rather than in order of seniority from within each affected department. The Court rejects this argument as illogical and instead reads this provision to mean that employees will be laid off in order of seniority from within each affected department. The fact that skill and ability are the initial points of comparison makes it clear that the order of seniority is meant to apply to employees within the same departments. Plaintiff Pridgen argues that Defendant violated this provision because, according to her declaration, "[e]mployees with less seniority, less experience, and less education than I were retained after I was terminated in the 2014 RIF." ECF No. 72, Ex. A, ¶ 21. As Plaintiff Pridgen does not provide any foundation for this statement or specify whether these employees worked in the same department as her, the Court finds that she has failed to raise a question of fact regarding her promissory estoppel claim. Summary judgment is granted as to Plaintiff Pridgen.

### iii. *Plaintiffs Halverson and Bordelois (ECF No. 50)*

Plaintiffs Halverson and Bordelois, on the other hand, have provided sufficiently specific information to raise a factual dispute regarding whether the District violated its seniority policy when it selected them for inclusion in the RIF. They allege, "In both of their respective departments, the District retained several employees who were less qualified and who had less seniority than Dr. Halverson and Ms. Bordelois." ECF No. 71 at 13. In support of this, Plaintiff Bordelios states in her declaration "I had more seniority than four of the Civil Engineers who were not terminated in the reduction in force" and "[w]hen I was laid off, several of the employees that I had trained remained at the Water District." ECF No. 71, Ex. A at ¶¶ 11-12. Plaintiff Halverson states in his declaration "The individual who was chosen to stay after my layoff, Mr. William Muarry [sic], came to the Water District after I did, was younger than I, and did not have a Ph.D." ECF No. 71, Ex. B at ¶ 19. As questions of skill and ability are fact-intensive inquiries, the Court finds that where these Plaintiffs have pointed to employees within their departments who were less

senior than them and potentially less skilled, they have raised a factual dispute on this claim. Summary judgment is denied as to Plaintiffs Halverson and Bordelois.

### iv. *Plaintiffs Morgan and Jackson (ECF No. 51)*

Plaintiffs Morgan and Jackson have also pointed to specific employees in their departments who were less senior and/or less qualified than them and were not selected for the RIF. In Plaintiff Jackson's declaration he states that an employee named Jason Ghadery remained in the Engineering Services Division while he was laid off. ECF No. 67, Ex. A at ¶ 18. He claims that Ghadery had less and experience seniority than Jackson, had the same level of education, and had been with the Engineering Services Division for about eight years, while Jackson had been there for sixteen years. Id. at ¶ 18-19. Plaintiff Morgan similarly alleges in his declaration that an employee named Michael Dishari was chosen to stay, who had significantly less experience in certain job duties than Morgan did. ECF No. 67, Ex. B at ¶¶ 19-22. Although Dishari was hired at the District before Morgan, Dishari had only been in the Engineering Services Division for one year, whereas Morgan had been there for his entire tenure of eleven years at the District. The Court finds that these specific allegations are sufficient to raise a factual dispute as to whether the District violated its layoff policy when it included these Plaintiffs in the RIF. Summary judgment is denied as to Plaintiffs Morgan and Jackson.

### v. *Plaintiff Russo (ECF No. 52)*

Plaintiff Russo has not provided sufficiently specific information to raise a question of fact as to whether the District violated its layoff policy when it included him in the RIF. In his declaration, he simply states, "There were many people who were less senior than I who would have been laid off if the Water District had followed their written lay off producers [sic]." ECF No. 66, Ex. A at ¶ 19. Plaintiff Russo provides no foundation and no basis for personal knowledge

of this statement. Summary judgment is granted as to Plaintiff Russo.

### vi. *Plaintiff Wilson (ECF No. 53)*

Plaintiff Wilson similarly argues vaguely that Defendant violated its seniority policy because "[e]mployees with less seniority and less experience were retained after I was terminated in the 2014 RIF." ECF No. 73, Ex. A at ¶ 30. As Plaintiff Wilson has not provided any foundation or specifics regarding this statement, including whether these employees were retained in the same department as Plaintiff Wilson, the Court finds this insufficient to raise a factual dispute for this claim. Summary judgment is granted as to Plaintiff Wilson.

### C. Title VII Retaliation Claim
#### *1. Legal Standard*

Title VII prohibits an employer from discriminating against an employee for opposing an unlawful employment practice. Nevada law also prohibits retaliation for protected activity and follows federal caselaw in interpreting its statutes. See N.R.S. § 613.340; Pope v. Motel 6, 114 P.3d 277, 311 (Nev. 2005). Retaliatory discharge claims follow the burden-shifting framework established in McDonnell Douglas. Dawson v. Entek Int'l, 630 F.3d 928, 936 (9th Cir. 2011). To establish a prima facie case, the employee must show that she engaged in a protected activity, was subsequently subjected to an adverse employment action, and that a causal link exists between the two. See Jordan v. Clark, 847 F.2d 1368, 1376 (9th Cir. 1988). The causal link can be inferred from circumstantial evidence such as the employer's knowledge of the protected activities and the proximity in time between the protected activity and the adverse action. Id. If an employee communicates to her employer a reasonable belief that the employer has engaged in a form of employment discrimination, that communication constitutes opposition to the activity. Crawford v. Metro. Gov't of Nashville & Davidson Cnty., Tenn., 555 U.S. 271, 276 (2009). If a plaintiff establishes a prima facie case of unlawful retaliation, the burden shifts to the employer to offer

evidence that the challenged action was taken for legitimate, non-discriminatory reasons. See Nidds v. Schindler Elevator Corp., 113 F.3d 912, 917 (9th Cir. 1996). If the employer provides a legitimate explanation for the challenged decision, the plaintiff must show that the defendant's explanation is merely pretext for impermissible discrimination. See Ray v. Henderson, 217 F.3d 1234, 1240 (9th Cir. 2000).

### *2. Discussion*

Plaintiff Bordelois is the only Plaintiff who maintains a claim for Title VII retaliatory discrimination at this point. She also maintains this claim under Nevada law. She argues that that there are material questions of fact precluding summary judgment on this claim because: 1) she and her same-sex partner spoke with Pat Maxwell in human resources regarding the mishandling of insurance and tax issues related to their status as a same-sex couple and filed a complaint with the District regarding these issues and 2) she was laid off 15 months later. The Court finds these facts to be undisputed. The Court further finds that Plaintiff Bordelois has failed to provide sufficient circumstantial evidence of the causal link between these two events to raise a genuine factual dispute. She has not provided any evidence, disputed or otherwise, that the individual who selected her to be included in the RIF, her manager Laura Jacobsen, had any knowledge of these complaints. Without further circumstantial evidence, 15 months is not a close enough temporal proximity to raise an inference of retaliation in this case. See Manatt v. Bank of Am., 339 F.3d 792, 802 (9th Cir. 2003)(holding that nine months between protected activity and alleged retaliation does not support inference of retaliation) The Court grants summary judgment against Plaintiff Bordelois on the federal and state law retaliation claims.

*///*

*///*

## VI. CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motions for Summary Judgment (ECF Nos. 49, 50, 51, 52, and 53) are GRANTED IN PART and DENIED IN PART as follows:

- Summary judgment is denied as to Plaintiffs Pridgen, Halverson, Jackson, Morgan, and Wilson's ADEA disparate treatment claims.
- Summary judgment is denied as to Plaintiffs Halverson, Jackson, Morgan, and Bordelois' promissory estoppel claims.
- Summary judgment is granted as to every other claim.

**IT IS FURTHER ORDERED** that Defendant's Motions for Summary Judgment (ECF Nos. 46 and 48) are GRANTED.

DATED: March 30, 2018.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**